```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/17/11
```

UNITED STATES DISTICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
ALKI PARTNERS, L.P. and ALKI FUND, LTD.,

              Plaintiffs

-against-                          09 Civ. 8125 (DAB)
                                   MEMORANDUM & ORDER


VATAS HOLDING GMBH, LARS WINDHORST,
PETER A. OGRISEK, SAPINDA INTERNATIONAL
LTD., ROBERT B. HERSOV, CREDIT SUISSE
GROUP AG, and FREDERIC RUIZ,

              Defendants.
------------------------------------------X
DEBORAH A. BATTS, United States District Judge.

      This action arises from a Complaint filed by Plaintiffs

Alki Partners, L.P. and Alki Fund, Ltd. (collectively, the "Alki

Entities") against Defendants Vatas Holding GmbH ("Vatas"), Lars

Windhorst ("Windhorst"), Peter A. Ogrisek ("Ogrisek"), Robert B.

Hersov ("Hersov"), Sapinda International Ltd. ("Sapinda"),

Credit Suisse Group AG ("Credit Suisse"), and Frédéric Ruiz

("Ruiz").  The First Amended Complaint ("Complaint") alleges

that Defendants created and carried out a market-manipulation

scheme to inflate the price of RemoteMDX, Inc. ("RMDX") stock

artificially.  The scheme collapsed, and the Alki Entities

sustained a large out-of-pocket loss.  The Complaint alleges

violations of federal securities laws §10(b) of the Securities

Exchange Act of 1934, 15 U.S.C. § 78j(b)[1] ("Section 10(b)"), and

§ 20(a) of the Securities Exchange Act of 1934, 15 U.S.C.

§ 78t(a).[2]   The Complaint also alleges various state law claims,

including: common law fraud;[3] breach of contract;[4] veil

piercing;[5] violations of the Securities Act of Washington, Wash.

Rev. Code Ann. § 21.20.010 (2009);[6] violations of the Securities

Act of Washington, Wash. Rev. Code Ann. § 21.20.430(3)(2009);[7]

civil conspiracy;[8] and violations of the Securities Act of

Washington, Wash. Rev. Code Ann. § 19.86.020 (2009).[9]

On March 5, 2010, Defendants Sapinda, Hersov, Windhorst and

Ogrisek moved to dismiss the Complaint, asserting numerous

---

[1] Count 1 against Vatas, Windhorst, Ogrisek, Hersov, Credit
Suisse and Ruiz.

[2] Count 2 against Windhorst, Ogrisek, Sapinda, Hersov and Credit
Suisse.

[3] Count 3 against Vatas, Windhorst, Ogrisek, Credit Suisse and
Ruiz.

[4] Count 4 against Vatas.

[5] Count 5 against Sapinda.

[6] Count 6 against Vatas, Windhorst, Ogrisek, Hersov, Credit
Suisse and Ruiz.

[7] Count 7 against Windhorst, Ogrisek, Sapinda, Hersov and Credit
Suisse.

[8] Count 8 against all Defendants.

[9] Count 9 against all Defendants.

jurisdictional and substantive objections.  On March 17, 2010,
the Defendants Credit Suisse and Ruiz also moved to dismiss the
Complaint, asserting similar jurisdictional and substantive
objections.  Defendant Vatas has not appeared in the case.  The
Motions to Dismiss are now before the Court.

     For the reasons contained herein, Defendants' Motions to
Dismiss are GRANTED.


## I. BACKGROUND

     The following allegations are taken from the First Amended
Complaint and supporting documents, which the Court assumes to
be true for purposes of the Motions to Dismiss.  Ashcroft v.
Iqbal, 129 S. Ct. 1937, 1950 (2009).

     Commencing on or around 2006, Defendant Vatas acquired
shares and warrants of the stock of RMDX through private
placements and other off-market transactions.  (First Am. Compl.
¶ 4.)  Vatas purposefully avoided acquiring shares of RMDX on
the open market by instructing others to purchase large blocks
of shares of RMDX with the understanding that Vatas would
thereafter re-purchase the shares in off-market transactions on
a delivery-versus-payment ("DVP"[10]) basis through institutions in

---

[10] To conduct a DVP trade, the Alki Entities, through their prime
broker, Goldman Sachs, would deliver the RMDX shares to Credit

Europe, including Credit Suisse.  (Id. at ¶ 5.)  By inducing

these transactions, Vatas created substantial demand in the

market for shares of RMDX.  (Id.)

RMDX is a Utah corporation that sells tracking devices to

monitor individuals in the criminal justice system.  (First Am.

Compl. ¶ 18.)  Its common stock was registered with the U.S.

Securities and Exchange Commission ("SEC") pursuant to § 12(g)

of the Securities Exchange Act of 1934.  (Id.)  The stock was

traded on the Over-the-Counter Bulletin Board ("OTCBB"), which

is a quotation service operated by the Financial Industry

Regulatory Authority, Inc. ("FINRA").  (Id.)  Prior to 2006,

RMDX's stock was a thinly traded security.  (First Am. Compl.

¶ 6.)  RMDX stock commenced trading on or around August 25, 2005

and traded in the $1.00 to $1.50 range until mid-2007.  (Id.)

By January 2008, the stock traded in the $4.00 range with

unprecedented volume.  (Id.)

Defendant Vatas is a German private limited liability

company with its principal offices in Germany.  (First Am.

Compl. ¶ 11.)  Defendants Windhorst and Ogrisek are Managing

Directors of Vatas and are citizens and residents of Germany.

(Id. at ¶¶ 12-13.)  Defendant Sapinda, a private corporation

---

Suisse, and Credit Suisse would pay Goldman Sachs for the shares
as soon as they were received.  (First Am. Compl. ¶ 37.)

organized under the laws of Great Britain with its principal
offices in the United Kingdom, is Vatas' sole shareholder. (<u>Id.</u>
¶ 14.)  Defendant Hersov is the principal shareholder of Sapinda
and is a citizen of South Africa and a resident of Great
Britain.  (First Am. Compl. ¶ 15.)

The Alki Entities are hedge funds engaged in the purchase
and sale of securities.  (First Am. Compl. ¶ 28.)  Alki Partners
is a limited partnership organized under the laws of the State
of California since September 2008.  (<u>Id.</u> at ¶ 9.)  Alki Fund is
a Cayman Island exempted company.  (<u>Id.</u> at ¶ 10.)  Since
September 2008, both Alki entities have maintained their
principal offices in California; prior to September 2008, both
Alki entities maintained their principal offices in the State of
Washington.  (First Am. Compl. ¶¶ 8-9.)  Alki Capital Management
LLC ("Alki Capital") was the General Partner of Alki Partners
and the Investment Advisor of Alki Fund, managing the portfolios
of both the Alki Entities until or around September 2008.  (<u>Id.</u>
at ¶ 29.)  During that time, Alki Capital's principal, Scott
Wilfong ("Wilfong"), made all investment decisions on behalf of
the Alki Entities, including the decision to purchase RMDX
stock.  (<u>Id.</u> at ¶ 29.)

Wilfong was introduced to RMDX and Windhorst in 2007 by
Mark L. Moskowitz, a stockbroker formerly employed by RBC

Capital Markets Corp. (First Am. Compl. ¶ 30-31.) Windhorst expressed to Wilfong that Vatas was interested in purchasing large quantities of RMDX common stock but was prevented from doing so on the open market because of Vatas' charter. (<u>Id.</u> at 31.) Wilfong agreed to purchase RMDX stock through the Alki entities and then transfer it to Vatas in exchange for a set fee.[11] (<u>Id.</u>)

When Wilfong and Windhorst arranged a trade, Wilfong would telephone Ruiz at Credit Suisse to advise him of the terms to which he and Windhorst had agreed. (First Am. Compl. ¶ 36.) Then, Ruiz would telephone Windhorst to confirm the transaction and arrange the acceptance of the DVP of the RMDX shares at Credit Suisse. (<u>Id.</u>) Goldman Sachs & Co. ("Goldman Sachs"), the Alki Entities' prime broker, would deliver the RMDX shares to Credit Suisse, and Credit Suisse would then make payment for the shares delivered. (First Am. Compl. ¶ 37.)

From April 2007 to February 2008, Wilfong caused the Alki Entities to purchase large quantities of RMDX stock with the expectation that it would be sold to Vatas. (First Am. Compl. ¶ 33.) Around January or February 2008, at Windhorst's request,

---

[11] The fee that Windhorst guaranteed the Alki Entities in return for the RMDX stock was the average cost the Alki Entities paid for the stock, plus the amount of the transaction costs incurred in connection with the purchase of the stock, plus an additional $.05 to $.10 per share. (First Am. Compl. ¶ 31.)

Wilfong increased the Alki Entities' purchases of RMDX stock for resale to Vatas. (Id. at ¶ 38.) The Alki Entities' purchases of RMDX stock accounted for a substantial portion of the total trading volume of RMDX stock.[12] (Id.)

Vatas also solicited other entities to purchase and transfer RMDX stock to it during this time. (First Am. Compl. ¶ 39.) The combined direct and indirect trading activity of Windhorst and Vatas of RMDX stock represented a substantial portion of the total trading volume of RMDX. (Id. at ¶ 40.) The market price of RMDX rose to a high of $4.24 on December 7, 2007, and hovered at prices between $3.50 and $4.00 per share in January and early February 2008. (Id.)

In February 2008, Credit Suisse froze Vatas' investment account. (First Am. Compl. ¶ 42.) Prior to the freeze, Ruiz had advised Wilfong regularly that the trades with Vatas would settle and that Vatas had money to pay for the RMDX trades. (Id.) Ruiz did not disclose to the Alki Entities that Vatas' account had been frozen. (Id. at ¶ 43.) After the account was frozen, Credit Suisse declined to accept any further delivery of RMDX stock from the Alki Entities. (First Am. Compl. ¶ 43.)

---

[12] On January 17 and 18, the Alki Entities' trading accounted for 67.21% and 60.82% of the total daily trading volume of RMDX stock, respectively, and on several other occasions, between January 31 and February 6, 2008, the trading accounted for upwards of 40% of the total daily volume. (First Am. Compl. ¶ 38.)

During this time, Wilfong continued to purchase RMDX stock for the Alki Entities but was prevented from transferring it to Vatas because of the freeze.  (Id.)  During the week of February 11, 2008, the price of RMDX stock dropped sharply, to approximately $1.50 per share.  (Id. at ¶ 44.)

Vatas agreed to a settlement with Plaintiffs on June 10, 2008.[13]  (Id. at ¶ 51.)  Pursuant to this agreement, Vatas was to purchase 4,100,000 shares of RMDX from the Alki Entities for $17,500,000.  The purchase price was to be paid in three stages. (Id.)  Only the first payment of $2,000,000 was made.  (First Am. Compl. ¶ 52.)  Further settlement negotiations were unsuccessful.[14]  (Id. at ¶¶ 54-55.)  After the failed settlement, the Alki Entities sold their shares of RMDX, resulting in an out-of-pocket loss in excess of $10,000,000.  (Id. at ¶ 56.)

## II. DISCUSSION

A.  Motions to Dismiss for Lack of Personal Jurisdiction

All Moving Defendants move to dismiss under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.

---

[13] Vatas was insolvent when it executed the Settlement Agreement on June 10, 2008.  (First Am. Compl. ¶ 53.)

[14] For example, Windhorst and Vatas proposed a "pump and dump" market manipulation scheme to drum up the $17,500,000 still owed to the Alki Entities.  The Alki Entities' investors rejected this plan "[f]or obvious reasons."  (First Am. Compl. ¶ 55.)

8

A defendant's jurisdictional motions are considered before any other type of motions. See Steel Co. v. Citizens for Better Env't, 523 U.S. 83, 94 (1998) ("'[w]ithout jurisdiction the court cannot proceed at all in any cause'") (quoting Ex Parte McCardle, 7 (Wall.) 506 (1868)).  On a motion pursuant to Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of making a prima facie showing that jurisdiction exists.  Best Van Line, Inc. v. Walker, 490 F.3d 239, 242 (2d Cir. 2007).  In deciding such a motion, "a district court has considerable procedural leeway," Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981) (citations omitted), and "may look to evidence outside the pleadings."  Seaweed Inc. v. DMA Prod. & Design & Mktg. LLC, 219 F. Supp. 2d 551 (S.D.N.Y. 2002).  The court may "determine the motion on the basis of affidavits alone or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion."  Id. Plaintiff ultimately bears the burden of establishing personal jurisdiction by a preponderance of the evidence, either at an evidentiary hearing or at trial.  A.I. Trade Fin., Inc. v. Petra Bank, 989 F.2d 76, 79 (2d Cir. 1993).  "But where the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor."  Id.  Conclusory allegations lacking

9

factual specificity, however, do not satisfy plaintiff's burden.
Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 184-88 (2d Cir. 1998).

Plaintiffs' federal claims are based on the Exchange Act, which provides for worldwide service of process and permits the exercise of personal jurisdiction to the limit of the Fifth Amendment's Due Process Clause. See 15 U.S.C. § 78aa; SEC v. Unifund Sal, 910 F.2d 1028, 1033 (2d Cir. 1990). Defendants do not argue that there was a defect in service, so Defendants are subject to the jurisdiction of this Court unless an exercise of jurisdiction would violate Defendants' rights under the Due Process Clause. "In determining whether personal jurisdiction exists over a foreign defendant who . . . has been served under a federal service of process provision, a court should consider the defendant's contacts throughout the United States and not just those contacts with the forum." U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., 241 F.3d 135, 152 n.12 (2d Cir. 2001).[15]

_____

[15] Under the doctrine of pendent personal jurisdiction, when the federal statute dictates service of process and the federal and state claims "derive from a common nucleus of operative fact," See United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966), this Court may exercise personal jurisdiction over the parties with respect to the state law claims, even if it would otherwise be unavailable. IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1057 (2d Cir. 1993). Because the claims in this case derive

As no jurisdictional discovery has occurred, and the Court will decide Defendants' motions on the basis of affidavits, the Court construes all allegations in the light most favorable to Plaintiff.  See Frontera Res. Azer., 582 F.3d at 397.

For personal jurisdiction to comport with due process, the defendant must have "minimum contacts" with the forum, and the exercise of personal jurisdiction must be reasonable.  In re AstraZeneca Sec. Litig., 559 F. Supp. 2d 453, 466-67 (S.D.N.Y. 2008) aff'd sub nom. State Universities Ret. Sys. of Illinois v. Astrazeneca PLC, 334 F. App'x. 404, 466 (2d Cir. 2009), citing Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996).  There are two circumstances in which courts may exercise personal jurisdiction over a defendant: when the defendant's contacts with the forum have been continuous and systematic to establish the court's general jurisdiction over him; or when the defendant has purposefully directed his activities toward the forum and the litigation arises out of or is related to his contact with the forum so that the court may exercise specific jurisdiction.  In re AstraZeneca Sec. Litig., 559 F. Supp. 2d at 466-67 (internal citation omitted).  To establish specific jurisdiction, the plaintiff must also show

---

from common facts, this Court need only address personal jurisdiction with respect to the federal claims.

that the defendant "purposely availed" himself of the privilege

of doing business in the forum state and that the defendant

could foresee being "haled into court" there.  <u>World-Wide</u>

<u>Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980) ("When a

corporation 'purposefully avails itself of the privilege of

conducting activities within the forum State' it has clear

notice that it is subject to suit there.").  Personal

jurisdiction is not appropriate where contacts with the

jurisdiction are merely "random," "fortuitous," or "attenuated."

<u>See</u> <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 475 (1985).

    1. Credit Suisse and Frederick Ruiz

    Plaintiffs first attempt to establish this Court's general

jurisdiction over Credit Suisse and Ruiz.  The Plaintiffs allege

that Credit Suisse "maintains offices and does business in this

Judicial District through various subsidiary businesses that

Credit Suisse directly and/or indirectly owns and controls."

(First Am. Compl. ¶ 16.)[16]

    For purposes of alleging presence within the judicial

district sufficient to satisfy the Due Process Clause, "a

parent-subsidiary relationship does not itself create

jurisdiction over the person unless the subsidiary is the alter

_____

[16] Credit Suisse submitted no affidavit in support of its
arguments regarding personal jurisdiction.

12

ego of the parent or a mere agent acting at the parent's

directions." Fed. Deposit Ins. Co. v. Milken, 781 F. Supp. 226,

230 (S.D.N.Y. 1991) (citing Blount v. Peerless Chem. (P.R.)

Inc., 316 F.2d 695, 699 (2d Cir.)).  Plaintiffs' allegations

that Credit Suisse "directly and/or indirectly owns and

controls" subsidiaries are conclusory and do not satisfy

Plaintiffs' burden with respect to a showing that Credit Suisse

has a presence within the jurisdiction.  See Ashcroft v. Iqbal,

129 S. Ct. 1937, 1949 (2009); Jazini, 148 F.3d at 184-88 (2d

Cir. 1998).

     This Court must therefore determine whether Plaintiffs

allege sufficient "minimum contacts" with the judicial district

for personal jurisdiction to comport with the Due Process

Clause.  According to the Complaint, Ruiz, a Credit Suisse

broker located in Switzerland, typically received phone calls

from Plaintiffs' agent advising Ruiz of the terms of a proposed

transaction.  Ruiz would then confirm those terms with his

client, Defendant Vatas, and then would instruct Credit Suisse

to accept the DVP of RMDX shares.  (First Am. Compl., ¶ 36.)

Credit Suisse would remit payment to Goldman Sachs for the

shares.  (Id., ¶ 37.)  Credit Suisse eventually froze Vatas'

account and refused to settle trades of RMDX shares, (Id.,

¶¶ 42-45), though Mr. Ruiz continued to advise Plaintiffs that the sales to Vatas would settle. (Id., ¶ 43.)

Another court in this district denied a motion to dismiss for lack of personal jurisdiction on similar facts. In Jesup, Josephthal & Co., Inc. v. Piguet & Cie, No. 90 Civ. 6544, 1991 WL 168053 (S.D.N.Y. Aug. 22, 1991), the plaintiff sued a Switzerland-based bank that processed payments on a DVP basis for the alleged perpetrator of a stock-inflation scheme. Id. at *3. In that case, the plaintiff alleged that the foreign bank defendant maintained brokerage accounts in New York through which it processed the payments. Id. at *2. The court found that in offering the services provided by those accounts to its client, the bank was acting to its own benefit, and thus "purposefully availing" itself of the privileges of doing business in the forum state. Id. Here, however, the Complaint is devoid of any allegation that Credit Suisse processed the DVP payments through accounts maintained in the United States.

The statements by Credit Suisse broker Ruiz do, however, make out a prima facie showing of personal jurisdiction as to Ruiz and Credit Suisse. Ruiz' affirmative advice to Plaintiffs, on behalf of Credit Suisse, that the RMDX trades would settle and that Vatas had money to pay for the RMDX shares had the "unmistakably foreseeable" effects within the United States that

14

Plaintiffs would rely on those representations and continue to purchase RMDX shares for resale to Vatas.  See In re Amaranth Natural Gas Commodities Litig., 587 F. Supp. 2d 513, 536 (S.D.N.Y. 2008) (finding personal jurisdiction where a defendant was aware that his actions "would affect the price of natural gas futures within the United States").

2. Ogrisek

Plaintiffs have made no serious attempt to establish general jurisdiction over Defendant Ogrisek.  They do, however, argue that the court has specific jurisdiction over him.  The Plaintiffs allege that "Defendant Peter A. Ogrisek is a citizen and resident of Germany.  At all times relevant to this Complaint, Ogrisek was a Managing Director of Vatas."  (First Am. Compl. ¶ 13.)  There are no allegations that Ogrisek ever travelled to the United States in furtherance of the scheme or otherwise.  There are no allegations that Ogrisek had contact with the Plaintiffs or acted to further the scheme at all.

Allegations that Ogrisek "manipulated the market for RMDX stock by engaging Wilfong and the Alki Entities, . . . and others, to acquire large quantities of RMDX stock, for ultimate resale, through prearranged trades outside the market, to Vatas," (First Am. Compl. ¶ 58), or that he "artificially affected the market price of RMDX stock, with the intent to

15

deceive the Alki Entities and the investing public," (First Am.
Compl. ¶ 63), are merely conclusory statements.  Plaintiffs fail
to allege any actions by Ogrisek to manipulate the market or any
participation in the scheme.  "A person's status as a board
member is not alone sufficient to establish jurisdiction . . .
and such conclusory allegations of participation in the fraud
are insufficient."  In re AstraZeneca Sec. Litig., 559 F. Supp.
2d at 467, (citing In re Alstom SA Sec. Litig., 406 F.Supp.2d
346, 400 (S.D.N.Y. 2005); and In re Royal Ahold N.V. Sec. &
ERISA Litig., 351 F.Supp.2d 334, 355 (D.Md. 2004)).

    In addition, the Complaint does not allege sufficiently
that Ogrisek controlled Vatas and/or Ruiz such that he could be
held liable on a theory of vicarious liability.  The Plaintiffs
merely allege that "Ogrisek, . . . had the power, influence and
authority and exercised the same to cause Vatas and/or Ruiz to
engage in the wrongful conduct and practices complained of
herein." (First Am. Compl. ¶ 72.)  As stated, the Complaint is
devoid of any facts that show conduct by Ogrisek to further the
scheme.  It is also devoid of factual allegations that he
exerted any control over others including Vatas and/or Ruiz or
constituted any other party as his "agent."  See Lanza v. Drexel
& Co., 479 F.2d 1277, 1292-93 (2d Cir. 1973) (finding that a
director who did not participate personally in the preparation,

16

ratification or issuance of false statements or circulars to prospective buyers was not vicariously liable for the fraud or negligence of others who were not his "agents").  Because the Complaint does not allege personal jurisdiction adequately over Ogrisek, all claims against him must be dismissed on this basis.

    3. Hersov and Sapinda

    Likewise, there are no allegations that Defendants Hersov or Sapinda had any contact with the Plaintiffs or with the United States in connection with the scheme or otherwise to establish general or specific personal jurisdiction.

    The Plaintiffs allege that Hersov is "the principal shareholder of Sapinda," (First Am. Compl. ¶ 15), and that Sapinda is "the sole shareholder of Vatas."  (Id. at ¶ 14.) However, these facts do not by themselves establish that Hersov or Sapinda are liable for the acts of Vatas.  An owner of stock is not automatically liable for the actions of the company whose stock it owns.[17]  United States v. Bestfoods, 524 U.S. 51, 61

---

[17] "It is a general principle of corporate law deeply "ingrained in our economic and legal systems" that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries. Douglas & Shanks, Insulation from Liability Through Subsidiary Corporations, 39 Yale L.J. 193 (1929; see also, e.g., Buechner v. Farbenfabriken Bayer Aktiengesellschaft, 154 A.2d 684, 687 (1959); Berkey v. Third Ave. R. Co., 155 N.E. 58 (1926) (Cardozo, J.); 1 W. Fletcher, Cyclopedia of Law of Private Corporations § 33, p. 568 (rev. ed. 1990) ("Neither does

(1998); <u>Time, Inc. v. Simpson</u>, 02 CIV. 4917 (MBM), 2003 WL

23018890, \*3 (S.D.N.Y. Dec. 22, 2003) (finding that a sole

shareholder was not subject to personal jurisdiction in the

Southern District of New York where the complaint failed to

demonstrate control, knowledge and consent by the defendant

relating particularly to the New York solicitations that form

the basis for the plaintiff's assertion of personal

jurisdiction), <u>citing</u> <u>United States v. King</u>, 134 F.3d 1173, 1175

(2d Cir.1998) ("We fully appreciate that state law recognizes

the separateness of a wholly owned corporation from its sole

shareholder for purposes of insulating the shareholder from

liability for the corporation's debts, at least in the absence

of circumstances warranting piercing the corporate veil.").

The Plaintiffs do not allege that Hersov exerted control

over Sapinda or that Sapinda exerted any control over Vatas or

---

the mere fact that there exists a parent-subsidiary relationship
between two corporations make the one liable for the torts of
its affiliate"); Horton, Liability of Corporation for Torts of
Subsidiary, 7 A.L.R.3d 1343, 1349 (1966) ("Ordinarily, a
corporation which chooses to facilitate the operation of its
business by employment of another corporation as a subsidiary
will not be penalized by a judicial determination of liability
for the legal obligations of the subsidiary"); cf. <u>Anderson v.
Abbott</u>, 321 U.S. 349, 362, (1944) ("Limited liability is the
rule, not the exception"); <u>Burnet v. Clark</u>, 287 U.S. 410, 415,
(1932) ("A corporation and its stockholders are generally to be
treated as separate entities")." <u>United States v. Bestfoods</u>,
524 U.S. 51, 61 (1998).

its directors.  Like Ogrisek, the only allegations attempting to connect Hersov to the scheme are conclusory because they are not based on factual allegations of conduct by Hersov in furtherance of the scheme.  (See First Am. Compl. ¶ 58 ("Hersov . . . manipulated the market for RMDX stock by engaging . . . others to acquire large quantities of RMDX stock, for ultimate resale, though prearranged trades outside the market, to Vatas"); First Am. Compl. ¶ 63 ("Hersov . . . artificially affected the market price of RMDX stock, with the intent to deceive the Alki Entities and the investing public.").)  These conclusory statements are not sufficient to justify personal jurisdiction over Hersov.

Plaintiffs allege that "Sapinda . . . had the power, influence and authority and exercised the same to cause Vatas and/or Ruiz to engage in the wrongful conduct and practices complained of herein."  (First Am. Compl. ¶ 72.)  This allegation is conclusory because the Plaintiffs fail to allege facts showing how Sapinda exercised control over Vatas or Ruiz by virtue of its stockownership or otherwise.  Since there are no factual allegations of direct conduct by Sapinda to warrant specific personal jurisdiction over it in the United States or that it controlled Vatas or Ruiz, there is no basis for exercising personal jurisdiction over it.

19

### 4. Windhorst and Vatas

The Plaintiffs allege that Windhorst directed Wilfong, who made all investment decisions on behalf of the Alki Entities, to cause the Alki Entities to purchase shares of RMDX stock. (First Am. Compl. ¶ 31.)  Windhorst's actions were therefore directed at the United States and unmistakably caused effects in the United States.  This is enough to justify exercising personal jurisdiction over him in connection with his actions toward the Alki Entities.

### B. Motions to Dismiss for Failure to State A Claim

All Defendants move to dismiss the § 10(b) and § 20(a) claims against them pursuant to Rule 12(b)(6).  For a complaint to survive a motion for dismissal under Rule 12(b)(6), the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."

_Ashcroft v. Iqbal_, 129 S.Ct. 1937, 1949 (2009) (_quoting_ _Twombly_, 550 U.S. at 556-57 (1955).  A plaintiff is required to state the grounds of his entitlement to relief based on facts. "Labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  _Twombly_, 550 U.S. at 555 (1955).

> In keeping with these principles, a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.   While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.   When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

_Iqbal_, 129 S. Ct. at 1950.

This court will determine if Plaintiffs have alleged conduct by each Defendant to satisfy each element of a § 10(b) and/or § 20(a) claim.

C. Section 10(b) Claim[18]

Section 10(b) of the Securities Exchange Act of 1934 makes it unlawful to "use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device

---

[18] Though the Complaint has failed to plead personal jurisdiction over some of the Defendants sufficiently, this Court will nonetheless address the substantive claims against all Defendants.

or contrivance in contravention of such rules and regulations as the Commission may proscribe." 15 U.S.C. § 78j(b). A complaint alleging a violation of Section 10(b) is a complaint alleging fraud and is therefore subject to heightened pleading requirements beyond the general rules of pleading set forth in Fed. R. Civ. Pro. 8(a). <u>Ganino v. Citizens Utilities Co.</u>, 228 F.3d 154, 168 (2d Cir. 2000). An assessment of the sufficiency of a claim of fraud brought under § 10(b) implicates statutory and regulatory framework involving § 10(b); Rule 10b-5 of the Securities Exchange Act of 1934 ("Rule 10b-5"); Federal Rule of Civil Procedure 9(b) ("Rule 9(b)"); and the pleading standards required by the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4 (the "PSLRA").

To survive a motion to dismiss in a claim for securities fraud, a complaint must allege all of the elements of § 10(b) or Rule 10b-5 with enough particularity to satisfy the requirement of Rule 9(b). <u>Ganino</u>, 228 F.3d at 168.

In addition to satisfying the requirements of Rule 9(b), private securities fraud actions must also meet the PSLRA's heightened pleading requirements. <u>See</u> 15 U.S.C. § 78u-4(b)(3)(A). Under the PSLRA, the complaint must (1) specify each statement alleged to have been misleading and give the reasons why the statement is misleading, and (2) state with

22

particularity facts that give rise to a strong inference that the defendant acted with the required scienter. 15 USC § 78u-4(b)(1)-(2). The complaint may not lump separate defendants together in vague and collective fraud allegations but must inform each defendant of the nature of his alleged participation in the fraud. In re Parmalat Securities Litigation ("Parmalat I"), 375 F.Supp.2d 278, 286 (S.D.N.Y. 2005).

   1. Elements of a Section 10(b) Manipulation Claim

     According to § 10(b), a complaint alleging securities fraud based on market manipulation must allege "(1) manipulative acts; (2) damage; (3) caused by reliance on an assumption of an efficient market free of manipulation; (4) scienter; (5) in connection with the purchase or sale of securities; (6) furthered by the defendant's use of the mails or any facility of a national securities exchange." ATSI Commc'ns Inc. v. Shaar Fund, 493 F.3d 87, 101 (2d Cir. 2007). Defendants contend that the Plaintiffs have not pled elements (1), (3) and (4) properly.

     a. Reliance on an Efficient Market

     The market manipulation claim must fail because Plaintiffs cannot claim that their damages were caused by reliance on an assumption of an efficient market free of manipulation. As an initial matter, while "the NASDAQ is recognized as maintaining an efficient market . . . the Court is unaware of any court

holding that the OTCBB . . . meet[s] this same standard." <u>Burke</u>
<u>v. China Aviation Oil (Singapore) Corp. Ltd.</u>, 421 F. Supp.2d
649, 653 (S.D.N.Y., 2005).

   Even were this Court to find that the OTCBB was an
efficient, free market, the Alki Entities, by their own
admissions, did not rely on that market.  Instead, they relied
on Windhorst's promise to pay them a guaranteed fee regardless
of the market price of RMDX. (First Am. Compl. ¶ 31.)  A
Plaintiff purchasing stock at the direction of and for the sole
purpose of selling to another purchaser on a cost-plus basis
cannot claim to have relied on the price set by an efficient
market.  <u>Scone Investments L.P. v. American Third Market Corp.</u>,
No. 97 Civ. 3802, 1998 WL 205338, at *6 (S.D.N.Y. Apr. 28, 1998)
(finding allegations that plaintiffs purchased shares for
immediate resale at a guaranteed profit "facially inconsistent
with the fraud on the market theory of reliance").

   Furthermore, a complaint alleging a violation of § 10(b) is
required to state that the transactions that caused the loss
were made "in ignorance of the fact that the price was affected
by the alleged manipulation." <u>Gurary v. Winehouse</u>, 190 F.3d 37,
45 (2d Cir. 1999).  Plaintiffs cannot possibly meet this
standard, since their own Complaint alleges that their
purchasing activity was the actual cause of dramatic rise in the

value of RMDX stock.   (First Am. Compl. ¶¶ 33-36, 38-40.)
Plaintiffs were not ignorant of the manipulation of the price of
RMDX stock that they now claim to be victims of, and so cannot
establish that they relied on market free of manipulation.

    b. Scienter

    Scienter is "a mental state embracing [the] intent to
deceive, manipulate, or defraud." Tellabs, Inc. v. Makor Issues
& Rights, Ltd., 551 U.S. 308, 319, 321 (2007) (quoting Ernst &
Ernst v. Hochfelder, 425 U.S. 185, 194 (1976)).  The PSLRA's
heightened standards for pleading scienter apply to a claim of
market manipulation.  ATSI Commc'ns, 493 F.3d at 102.  In order
to plead scienter under the PSLRA requirements, plaintiffs must
"state with particularity facts giving rise to a strong
inference that the defendant acted with the required state of
mind."  15 U.S.C.A. § 78u-4(b)(2)(A).  The complaint must allege
"facts to show either (1) that defendants had the motive and
opportunity to commit fraud, or (2) strong circumstantial
evidence of conscious misbehavior or recklessness." Ganino, 228
F.3d at 168-69. "The inference [that the defendants possessed
the required scienter] may arise where the complaint
sufficiently alleges that the defendants: (1) benefitted in a
concrete and personal way from the purported fraud; (2) engaged
in deliberately illegal behavior; (3) knew facts or had access

to information suggesting that their public statements were not accurate; or (4) failed to check information they had a duty to monitor." Novak v. Kasaks, 216 F.3d 300, 311 (2d Cir. 2000) (internal citations omitted).

In addition, "to determine whether the plaintiff has alleged facts that give rise to the requisite 'strong inference' of scienter, a court must consider plausible nonculpable explanations for the defendant's conduct . . . ." Tellabs, 551 U.S. at 323-324. The inference of scienter "need not be irrefutable," but "must be more than merely 'reasonable' or 'permissible'-it must be ... cogent and at least as compelling as any opposing inference one could draw from the facts alleged." Id. at 324. In determining whether this standard has been met, a court must consider "whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." Id. at 323.

A complaint alleging a violation by virtue of a deceptive or manipulative device must still comply with Rule 9(b)'s requirement of particularity when stating the conduct alleged and the basis for the allegation of scienter. Parmalat I, 375 F.Supp.2d at 286.

i. Credit Suisse and Ruiz

26

Plaintiffs do not allege that Ruiz or Credit Suisse possessed the intent to commit fraud.  The only profit that Ruiz or Credit Suisse could hope to receive from the alleged fraud was normal transactional costs.  Courts in this district, however, have found that normal transactional costs are insufficient to establish motive.  In re College Bound Consolidated Litig., No. 93 Civ. 2348, 1995 WL 450486, *12 (S.D.N.Y. 1995) (finding an allegation that defendant was motivated to commit fraud by the desire to receive professional fees for services insufficient to establish that he possessed the required scienter to commit fraud); see also Friedman v. Arizona World Nurseries Ltd., 730 F. Supp. 521, 532 (S.D.N.Y. 1990) ("It would defy common sense to hold that the motive element . . . would be satisfied merely by alleging the receipt of normal compensation for professional services rendered"), aff'd, 927 F.2d 594 (2d Cir. 1991).  The Complaint fails to allege any other motive or opportunity for Ruiz or Credit Suisse to participate in the fraud beyond normal transactional fees.

The Complaint likewise fails to establish that Ruiz and Credit Suisse acted recklessly.  A plaintiff may raise a strong inference of scienter where the defendants "failed to check information they had a duty to monitor." Novak v. Kasaks, 216 F.3d 300, 311 (2d Cir. 2000).  However, Plaintiffs may not

27

proceed with allegations of "fraud by hindsight," and allegations that defendants "should have anticipated future events and made certain disclosures earlier than they actually did" do not support a strong inference of scienter." Id. Plaintiffs allege "Ruiz's representations to Wilfong were false or made with reckless disregard for the truth." (First Am. Compl. ¶ 42.)  They do not allege that Ruiz knew that the trades would never settle or that the freeze was permanent.  Even making inferences in favor of the non-moving party, it cannot be inferred that Ruiz's actions were in furtherance of the scheme.

The alternative explanation, that Credit Suisse and Ruiz were merely processing private purchase and sale transactions based on instructions provided by their clients, is more compelling than the plaintiffs' assertion that Ruiz and Credit Suisse are also liable for the fraud.

Because there are no particular facts alleged giving rise to a strong inference that Ruiz or Credit Suisse acted with the required scienter, the Complaint has not adequately alleged that they are culpable for market manipulation under 10(b).  See ATSI Commc'ns, 493 F.3d at 105.

ii. Ogrisek, Hersov and Sapinda

There are no factual allegations that Ogrisek and Hersov possessed the required scienter to commit the alleged fraud

28

because there are no allegations that they had motive or opportunity to commit the fraud because of the possibility of personal gain.

The Complaint merely alleges that, "based on information and belief," Ogrisek and Hersov "knew that the active trading that they orchestrated would have a significant impact upon the market price for RMDX common stock." (First Am. Compl. ¶ 35.) There are no other allegations that Ogrisek and Hersov participated in the scheme. Mere knowledge of another's violation of § 10(b), or even aiding and abetting a violation, is not enough to establish liability under § 10(b). <u>Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.</u>, 511 U.S. 164 (1994). The Complaint merely alleges that Ogrisek and Hersov knew that the scheme would affect the market price of RMDX stock. (First Am. Compl. ¶ 35.) These allegations are not sufficient to establish liability under § 10(b).

The Complaint is devoid of any allegation that Sapinda possessed the requisite scienter to establish fraud. There are simply no allegations that Sapinda possessed any information, performed any acts or stood to receive any personal benefit from the alleged scheme.

      iii. Windhorst

29

With respect to Windhorst, the Complaint alleges that
Windhorst, through Vatas, made "commitments to purchase large
blocks of RMDX" with "no intention of honoring its commitments."
(First Am. Compl. ¶ 7.)   "[M]aking a specific promise to perform
a particular act in the future while secretly intending not to
perform that act may violate Section 10(b) where the promise is
part of the consideration for the transfer of securities."  Luce
v. Edelstein, 802 F.2d 49, 55-56 (2d Cir. 1986); see also Gurary
v. Winehouse, 190 F.3d 37, 44 (2d Cir. 1999) ("The failure to
carry out a promise made in connection with a securities
transaction is normally a breach of contract. It does not
constitute fraud unless, when the promise was made, the
defendant secretly intended not to perform or knew than he could
not perform.")(quoting Mills v. Polar Molecular Corp., 12 F.3d
1170, 1176 (2d Cir. 1993).

Here, Plaintiffs allege that Vatas was "undercapitalized,"
and therefore never intended to perform or was unable to perform
as promised.  (First Am. Compl. ¶ 7.)  This allegation, however,
is conclusory and lacks sufficient factual detail to make a
claim that Windhorst or Vatas never intended to perform.  In
contrast, the facts in the Complaint show that Windhorst and
Vatas fulfilled their promises to the Alki Entities until an
intervening act, Credit Suisse's freezing of Vatas account,

prevented them from accepting the trades of RMDX stock from the
Alki Entities.  (First Am. Compl. ¶ 42.)  See Elliot Assoc.,
L.P. v. Hayes, 141 F. Supp. 2d 344, 35 (S.D.N.Y. 2000) (finding
defendants' initial partial performance under a contract was
"compelling evidence that [defendants] intended to perform
initially, thus negating any inference of fraudulent intent").
Since there are no allegations that Windhorst did not intend to
perform at the time he made the promise, Plaintiffs' Complaint
fails to allege scienter with respect to Windhorst.

     c. Manipulative Acts

     The manipulative acts element of a § 10(b) manipulation
claim is plead sufficiently when the complaint shows that an
alleged manipulator engaged in market activity aimed at
deceiving investors by misleading them as to how other market
participants have valued a security.  ATSI Commc'ns 493 F.3d at
100.  "The deception arises from the fact that investors are
misled to believe that prices at which they purchase and sell
securities are determined by the natural interplay of supply and
demand, not rigged by manipulators."  ATSI Commc'ns, 493 F.3d at
100, quoting Gurary v. Winehouse, 190 F.3d 37, 45 (2d Cir. 1999)
(internal citations omitted).  In identifying activity that is
outside the natural interplay of supply and demand, courts

31

generally ask whether a transaction sends a false pricing signal
to the market.  ATSI Commc'ns, 493 F.3d at 100.

Defendants claim that the Plaintiffs have not alleged
manipulative acts with enough specificity to satisfy Rule 9(b)
and the PSLRA.  Plaintiffs argue that the allegations in the
Complaint are sufficient because "[t]he pleading requirements of
the . . . PSLRA . . . regarding misleading statements and
omissions do not apply to claims that allege no
misrepresentation or omission but instead are based on alleged
violations of Rule 10b-5(a) and (c).  (Pls.' Mem. of Law in
Opp'n To The Mot.'s To Dismiss By (i) Windhorst, Ogrisek,
Hersov, Sapinda, (ii) Ruiz, and (iii) Credit Suisse, at 12
(citing In re Parmalat Securities Litigation ("Parmalat II"), 376
F.Supp.2d 472 (S.D.N.Y., 2005); see also ATSI Commc'ns, 493 F.3d
at 102 ("A claim of manipulation, in contrast to a claim of
misrepresentation, can involve facts solely within the
defendant's knowledge; therefore, at the early stages of
litigation, the plaintiff need not plead manipulation to the
same degree of specificity as a plain misrepresentation
claim.").)  However, general allegations based on speculation
are still insufficient to state a claim.  ATSI Commc'ns at 102.
A pleading must set forth, to the extent possible, what
manipulative acts were performed, which defendants performed

them, when the manipulative acts were performed, and what effect

the scheme had on the market for the securities at issue.  Id.

        i. Ruiz and Credit Suisse

    The Plaintiffs allege that Ruiz engaged in manipulative

behavior when he "knowingly and willingly and/or recklessly,

without regard for the consequences of his actions, placed and

processed the prearranged outside of the market orders by which

Vatas purchased RMDX stock from the Alki Entities . . . , all in

furtherance of the manipulation of the market for RMDX stock,"

(First Am. Compl. ¶ 61), and that "as Vatas' broker, defendant

Ruiz knew that Vatas was selling RMDX stock at the same time

that Hersov, Windhorst, Ogrisek and Vatas were manipulating the

price of the stock upward."  (First Am. Compl. ¶ 62.)

    The Plaintiffs have stated no other basis for their

allegations against Ruiz beyond his role as Vatas' account

manager/broker.  The Plaintiffs are unable to allege any

specific acts by Ruiz to manipulate the market purposefully.

See ATSI Commnc'ns., Inc. v. Shaar Fund, Ltd., 579 F.3d 143, 149

(2d Cir. 2009), quoting district court's dismissal, ATSI

Commn'cs., Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 104 (2d Cir.

2007) ("ATSI I") (Finding allegations that a broker-dealer "knew

or should have known of the manipulation," to be "plainly

insufficient . . . absent [ ] particular facts giving rise to a

strong inference that [the defendant] acted with scienter in manipulating the market . . . ." Id. at 104-05.)

Ruiz' activities, which allegedly involved placing and processing prearranged outside the market orders between the Alki Entities and Vatas (First Am. Compl. ¶ 61), do not amount to "market activity aimed at deceiving investors by misleading them as to how other market participants have valued a security." ATSI Commc'ns 493 F.3d at 100. The Plaintiffs have not alleged with any specificity that Ruiz' activity was misleading to other market participants. There are no allegations that the DVP transfers were manipulative or misleading.

Credit Suisse is alleged to have engaged in manipulative acts through its employee, Ruiz. However, because there are no allegations that Ruiz acted in any way to manipulate the market or RMDX stock, Plaintiffs have also failed to satisfy the manipulative acts element as to Credit Suisse.

　　　ii. Ogrisek

The Complaint alleges many acts by Windhorst, but does not allege specific acts by Ogrisek in furtherance of the scheme. Lumping allegations in the complaint against defendants in a claim for collective fraud is impermissible. Parmalat I, 375 F. Supp. 2d at 286.

34

In addition, Plaintiffs have not satisfied the pleading requirements for a claim of securities fraud against Directors. To state such a claim, Plaintiffs must allege that the directors personally knew of the fraud or participated in it. <u>Mills v. Polar Molecular Corp.</u>, 12 F.3d 1170, 1175 (2d Cir. 1993) (holding that allegations of a company's wrongdoing were insufficient to satisfy Rule 9(b) as to the company's directors, where plaintiffs failed to link particular directors to the alleged fraudulent statements.)

Plaintiffs here do not allege that Ogrisek had any knowledge of the fraud or participated in it. The Complaint merely alleges the connections between Vatas and Ogrisek by virtue of his title of "Director." This fact is insufficient to state a claim against him for market manipulation.

       iii. Hersov and Sapinda

The Complaint similarly fails to allege that Hersov or Sapinda engaged in any fraudulent acts. As stated in Part II(A)(3) <u>infra</u>, the only factual allegations regarding Sapinda and Hersov are that Sapinda is "the sole shareholder of Vatas" (<u>Id.</u> at ¶ 14.) and Hersov is "the principal shareholder of Sapinda." (First Am. Compl. ¶ 15.)

As a general rule, two separate corporations are regarded as distinct legal entities even if the other owns the stock of

35

one wholly or partly.  United States v. Bestfoods, 524 U.S. 51,
61 (1998); see also infra n.12.  The exception to this rule is
when a parent corporation and its subsidiary demonstrate a
virtual abandonment of separateness in the way the corporation
is operated.  Carte Blanche (Singapore) Pte., Ltd. v. Diners
Club Int'l, Inc., 2 F.3d 24, 26, 29 (2d Cir. 1993).  See In re
Parmalat Securities Litigation ("Parmalat I"), 375 F. Supp. 2d
278, 294-97 (S.D.N.Y., 2005)(finding a complaint insufficient
where it alleged that subsidiary firms were agents of defendant,
principal firm, but not that the principal firm had the
opportunity to dominate the other entities or use them to commit
fraud).[19]

        The Plaintiffs do not allege facts that establish that
Hersov acted as an agent of any other party or that he
coordinated with, dictated procedure to, or influenced any other
party as its principal.  Likewise, there are no allegations that
Hersov used his close relationship to Sapinda to dominate it and

_____

[19] Courts consider corporate organizational and structural
factors such as the failure to adhere to corporate formalities,
undercapitalization, intermingling of funds, overlap in
ownership, staff and directorship, common use of office space,
the degree of discretion shown by the wrongdoer, whether the
dealings between the entities are at arms' length, and whether
the corporations are treated as independent profit centers.  In
re Parmalat Securities Litigation, 375 F.Supp.2d 278, 292
(S.D.N.Y. 2005).

use it to commit the fraud.  Plaintiffs also do not allege facts showing that Sapinda was the agent or principal to any other party.  There are no facts showing that Sapinda used its stockownership of Vatas to dominate Vatas and then used it to commit the fraud.  Therefore, Plaintiffs have failed to allege the manipulative acts element as to Hersov and Sapinda.

> iv.  Windhorst

Plaintiffs allege that Windhorst engaged in manipulative acts when he recruited companies and funds to purchase RMDX stock on the OTCBB market, and then instructed those other companies and funds to transfer the RMDX stock to Vatas in an outside the market transaction for a prearranged, guaranteed fee.  (First Am. Compl. ¶ 5.)  Plaintiffs also allege that Windhorst "issued in the money puts to holders of RMDX common stock in order to convince the recipients of the in the money puts . . . to refrain from selling these RMDX shares into the market."  (Id. ¶ 8.)  These allegations are sufficient to satisfy the manipulative acts element, because they show plausibly that Windhorst, through Vatas, intended to mislead market participants as to how other market participants have valued a security.  ATSI Commc'ns 493 F.3d at 100.

Nevertheless, the Court notes that Plaintiffs were not "market participants" and cannot claim to have been misled by

37

even this manipulation, since Plaintiffs were indifferent to the market price of RMDX stock and were instead planning to re-sell it on a cost-plus basis for a guaranteed profit. (First Am. Compl. ¶ 31.)

2. Misstatement or Omission 10(b) Claim

To state a claim for securities fraud under § 10(b) based on misstatements or omissions, a plaintiff must allege that each defendant "(1) made misstatements or omissions of material fact, (2) with scienter, (3) in connection with the purchase or sale of securities, (4) upon which the plaintiff relied, and (5) that the plaintiff's reliance was the proximate cause of its injury." ATSI Commc'ns, 493 F.3d at 105 (citing Lentell v. Merrill Lynch & Co., 396 F.3d 161, 172 (2d Cir.2005)). See 15 U.S.C. § 78j(b). As with Plaintiffs' market manipulation claim, Plaintiffs' claim under § 10(b) must fail because Plaintiffs fail to allege scienter. Accordingly, Defendants' Motions to Dismiss the § 10(b) Claims against them are GRANTED.


D. Section 20(a) Claim

To state a claim for control person liability under Section 20(a), Plaintiffs must allege (a) a primary violation by a controlled person, (b) actual control by the defendant, and (c) the controlling person's culpable participation in the primary

38

violation. See In re Bristol Myers Squibb Co. Sec. Litig., 586

F.Supp.2d 148, 170-71 (S.D.N.Y. 2008). Because Plaintiffs have

failed to plead a primary violation by any person named in the

Complaint as set forth above, Defendants' Motions to Dismiss the

§ 20(a) Claim against them are GRANTED.


E. Claims Against Vatas

    The Court notes that Defendant Vatas has not appeared in the

case and did not join in the other Defendants' motions to

dismiss.  The district court has the power to dismiss a

complaint against non-moving defendants, but such power should

be exercised cautiously and on notice.  Wachtler v. County of

Herkimer, 35 F.3d 77, 82 (2d Cir. 1994) (affirming district

court's dismissal of claim against defendant who neither

answered nor moved for dismissal since plaintiff was on notice

from motion of other defendants); Hecht v. Commerce Clearing

House, 897 F.2d 21, 26 ftn.6 (2d Cir. 1990) ("sua sponte

dismissal of the complaint with respect to [non-moving

defendant] is appropriate here, because the issues concerning

[non-moving defendant] are substantially the same as those

concerning the other defendants, and [plaintiff] had notice and

a full opportunity to make out his claim . . .").  See also

39

Perez v. Ortiz, 849 F.2d 793, 797 (2d Cir. 1988) (discussing
when sua sponte dismissals may be appropriate).

In the instant § 10(b) and 20(a) case, the Plaintiffs are
unable to establish the elements of reliance and scienter with
respect to Vatas for the same reasons they are unable to
establish the element with respect to the moving defendants.
The motions made by Defendants Windhorst, Ogrisek, Hersov,
Sapinda, Credit Suisse and Ruiz placed Plaintiffs on notice of
this ground for dismissal.  (See Mem. In Supp. of Mot. by
Windhorst, Ogrisek, Hersov and Sapinda To Dismiss Pls.' First
Am. Compl. at 26-27; Mem. In Supp. of Mot. By Credit Suisse To
Dismiss the First Am. Compl. at 11-16; and Mem. In Supp. of
Ruiz's Mot. To Dismiss at 7-8.)  Plaintiffs were afforded the
opportunity to respond to all motions for dismissal filed by the
Defendants. (See Pls.' Mem. In Opp. To Mots. To Dismiss.)
Accordingly, the Court finds it appropriate to dismiss the
federal causes of action as to Defendant Vatas.


F. State Law Claims

As all of Plaintiff's federal claims must be dismissed, all
that remains are Plaintiffs' Washington state and common law
claims.  Jurisdiction over Plaintiff's Washington state and
common law claims is premised on the Court's supplemental

40

jurisdiction under 28 U.S.C. § 1367(a). The Court declines to
exercise supplemental jurisdiction over Plaintiff's state law
claims under 28 U.S.C. § 1367(c)(3). <u>Kshel Realty Corp. v. City
of New York</u>, 2006 WL 2506389, at *13 (S.D.N.Y. Aug. 30 2006)
("[T]he Second Circuit instructs that 'absent exceptional
circumstances,' where federal claims can be disposed of on
12(b)(6) or summary judgment grounds, courts should 'abstain
from exercising pendent jurisdiction.'") (<u>quoting</u> <u>Walker v. Time
Life Films, Inc.</u>, 784 F.2d 44, 53 (2d Cir. 1986).


G. Leave to Replead

     Even when a complaint has been dismissed, permission to
amend it "shall be freely given when justice so requires."
Fed.R.Civ.P. 15(a). A court may dismiss without leave to amend
when amendment would be futile. <u>Oneida Indian Nation of New
York v. City of Sherrill</u>, 337 F.3d 139, 168 (2d Cir. 2003),
<u>rev'd on other grounds</u>, 544 U.S. 197, (2005). "A proposed
amendment to a pleading would be futile if it could not
withstand a motion to dismiss pursuant to Rule 12(b)(6)." <u>Id</u>.
(<u>citing</u> <u>Ricciuti v. N.Y.C. Transit Auth.</u>, 941 F.2d 119, 123 (2d
Cir.1991)). This Court finds that amendment to the Complaint
will be futile because Plaintiffs cannot allege that they relied
on an efficient market, given that they were not genuine market

41

participants, but were instead planning to re-sell stock on a "cost-plus" basis for guaranteed profit.  Plaintiffs are DENIED leave to amend the Complaint.


### III. CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss the Complaint are GRANTED.

Plaintiffs' federal claims are DISMISSED WITH PREJUDICE as to all Defendants.

Leave to amend the Complaint is DENIED.

The Court DECLINES to exercise supplemental jurisdiction over Plaintiffs' state law claims, and those claims are DISMISSED WITHOUT PREJUDICE as to all Defendants.

The Clerk of Court is directed to CLOSE the docket in this case.


SO ORDERED.

Dated:    New York, New York
          February 17, 2011

                                    Deborah A. Batts
                                Deborah A. Batts
                           United States District Judge


42